UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1**

K&L Gates LLP
One Newark Center
1085 Raymond Boulevard, 10th Floor
Newark, NJ 07102
Telephone: (973) 848-4000
Facsimile: (973) 848-4001
Daniel M. Eliades, Esq.
Daniel.eliades@klgates.com
David S. Catuogno, Esq.
David.catuogno@klgates.com

*Special Counsel for the Reorganized Debtors*

Forman Holt
2 University Plaza Drive - Suite 308
Hackensack, NJ 07601
Telephone: (201) 857-7110
Facsimile: (201) 665-6650
Michael E. Holt, Esq.
Mholt@formanlaw.com

*Counsel for the Reorganized Debtors*

| | |
|---|---|
| In re:<br><br>Supor Properties Enterprises LLC, *et al.*[1],<br><br>Debtors. | Case No. 24-13427 (SLM)<br>Judge: Hon. Stacey L. Meisel<br>Chapter 11<br><br>(Jointly Administered) |
| Supor Properties Enterprises LLC,<br>J Supor 136-1 Realty LLC,<br>Supor-172 Realty LLC, and Supor Properties 600 Urban Renewal, LLC,<br>Plaintiffs,<br><br>v.<br><br>Everest Blue Capital LLC and Does I-V,<br>Defendants. | Adv. Pro. No. 26- |

[1] The Debtors in these related chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Supor Properties Enterprises LLC (5580); J Supor 136-1 Realty LLC (3205); Supor-172 Realty LLC (EIN No. 5662); Supor Properties Breiderhoft LLC (7258); Supor Properties Devon LLC (6357); Shore Properties Associates North LLC (6707); Supor Properties 600 Urban Renewal, LLC (8604); JS Realty Properties, LLC (2497); and Supor Properties Harrison Avenue, LLC (1728).

# COMPLAINT

Plaintiffs Supor Properties Enterprises LLC, J Supor 136-1 Realty LLC, Supor-172 Realty LLC (collectively, the "FER Debtors," the "FER Plaintiffs" or "FER Sellers"), and Supor Properties 600 Urban Renewal, LLC ("Supor 600"), each a "Plaintiff" or "Seller" and collectively "Plaintiffs" or "Sellers", by and through their undersigned counsel, for their Complaint against Defendant Everest Blue Capital LLC ("Everest Capital" or "Lender"), hereby state and allege as follows:

## THE PARTIES

1. Plaintiff Supor Properties Enterprises LLC ("Supor Enterprises") is a Delaware limited liability company, with a post office address of 433 Bergen Avenue, Kearny, New Jersey 07032.

2. Plaintiff J Supor 136-1 Realty LLC ("Supor 136") is a Delaware limited liability company, with a post office address of 433 Bergen Avenue, Kearny, New Jersey 07032.

3. Plaintiff Supor-172 Realty LLC ("Supor 172") is a Delaware limited liability company, with a post office address of 433 Bergen Avenue, Kearny, New Jersey 07032.

4. Plaintiff Supor 600 is a New Jersey limited liability company, with a post office address of 433 Bergen Avenue, Kearny, New Jersey 07032.

5. Upon information and belief, Defendant Everest Capital is a limited liability company incorporated in Connecticut with a principal business address of 136-31 41st Avenue, Suite 8, Flushing, New York 11355.

## JURISDICTION AND VENUE

6. On April 2, 2024, (the "Petition Date") Plaintiffs and affiliates Supor Properties Breiderhoft LLC; Supor Properties Devon LLC; Shore Properties Associates North LLC; JS Realty Properties, LLC; and Supor Properties Harrison Avenue LLC (each along with Plaintiffs a

"Debtor" and collectively with Plaintiffs, the "Debtors") filed voluntary chapter 11 bankruptcy petitions with the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Cases"). On April 8, 2024, this Court entered an Order providing for the joint administration of the Bankruptcy Cases [ECF No. 35].[2]

7. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b)(2) and (c), the Debtors' confirmed Plan and the Confirmation Order (defined, *infra*), all of which specifically reserved and retained jurisdiction of this Court as to the issues raised in this adversary proceeding. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(o).

8. Article XV of the Plan provides that "[a]fter Confirmation of the Plan, the Bankruptcy Court shall retain jurisdiction to the fullest extent legally permissible for all purposes consistent with the Plan and the Code," including the "determination of all causes of action, controversies, disputes, or conflicts... between the Reorganized Debtors and any other Person, including, but not limited to, any right of the Reorganized Debtors to recover assets."

9. This adversary proceeding arises directly from the Everest Capital Loan Commitments (defined, *infra*), which were approved by this Court and the subject of multiple orders of this Court, including the Order Modifying Order Compelling Debtors' Performance entered on May 22, 2026 [ECF No. 525] and the Order entered June 12, 2026 [ECF No. 532], each of which incorporated and addressed the Everest Capital Loan Commitments as integral to the Debtors' Exit Transactions under the confirmed Plan.

10. Venue is proper in this district pursuant to 28 U.S.C. §§1408 and 1409. This adversary proceeding is commenced pursuant to Rules 7001(1) (7) and (9), 7064 and 7065 of the Federal Rules

[2] All ECF references are to the docket in the jointly administered Bankruptcy Cases.

of Bankruptcy Procedure and 11 U.S.C. §105(a).

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

### A. The Plaintiffs and their Properties.

11. Debtor Plaintiff Supor Enterprises owned part of the property commonly known as 1000 Frank E Rodgers Boulevard, Harrison, New Jersey (specifically, lot 5.02 in block 151; lot 17.02 in block 137; and lot 1.02 in block 149) ("FER 1 Property"). The sole member of Supor Enterprises is S&B Realty Partnership. The partners of S&B Realty Partnership are Joseph Supor III ("Mr. Supor") and the Marital Trust under the Last Will and Testament of Joseph Supor, Jr. Dated September 13, 2002, as Amended by First Codicil Dated June 14, 2007 (the "Marital Trust"). Mr. Supor is the trustee of the Marital Trust and a beneficiary of the Marital Trust.

12. Debtor Plaintiff Supor 136 owned part of the property commonly known as 1000 Frank E Rodgers Boulevard, Harrison, New Jersey (specifically, lot 1.07 in block 136) ("FER 2 Property"). The sole member of Supor 136 is J Supor 136-1 LLC. The sole member of J Supor 136-1 LLC is Mr. Supor.

13. Debtor Plaintiff Supor 172 owns part of the property commonly known as 1000 Frank E Rodgers Boulevard, Harrison, New Jersey (specifically, lot 1 in block 172) ("FER 3 Property" and together with FER 1 Property and FER 2 Property, the "FER Property"). The sole member of Supor 172 is Supor-172 LLC. The sole member of Supor-172 LLC is Mr. Supor.

14. The FER Property at 1000 Frank E Rodgers Boulevard, Harrison New Jersey consists of contiguous parcels of unimproved and vacant land, together comprising approximately 9.85 acres.

15. The FER Property was the subject of an Amended and Restated Redevelopment Agreement dated February 24, 2021, by and between the Harrison Redevelopment Agency, the Town of Harrison, Supor Enterprises, Supor 136 and Supor 172 (the "Harrison RDA"). The

Harrison RDA was recorded with the Hudson County Register on April 20, 2021, at book 9552, page 39, index number 20210420010031740.

16. The Harrison RDA granted Plaintiffs rights to redevelop the FER Property and construct 1,500 residential units, a 200-room hotel, 151,960 square feet of retail space, 1,000,000 square feet of office space and 4,570 parking spaces, making the FER Property a uniquely valuable and irreplaceable real estate asset.

17. Supor 600 is a New Jersey limited liability company formed on July 18, 2019. The sole member of Supor 600 is Supor Properties 600 UR Holding LLC.

18. Debtor Plaintiff Supor 600 owns the property commonly known as 600 Guyon Drive, Harrison, New Jersey (lot 16.01 in block 150) (the "600 Guyon Property").

19. The 600 Guyon Property consists of approximately 3 acres of land improved with a 50,000 square foot building consisting of warehouse and office space. The 600 Guyon Property is adjacent to the FER Property.

**B. The Sale Process.**

19. On April 5, 2024, the Debtors filed a motion for an order authorizing the employment of CBRE, Inc. ("CBRE") as their real estate broker for purposes of marketing and selling real properties owned by the Debtors – including the FER Property and the 600 Guyon Property [ECF No. 24].

20. On April 15, 2024, the Bankruptcy Court entered an order authorizing the Debtors' employment of CBRE as their real estate broker [ECF No. 53].

21. On April 22, 2024, Debtors filed a *Motion for Entry of an Order (I)(A) Approving Auction and Bidding Procedures, (B) Scheduling Bid Deadlines and an Auction, and (C) Approving the Form and Manner of Notice Thereof, and (II) (A) Authorizing the Sale of Assets and (B) Granting Related Relief* [ECF No. 7] (the "Sale Procedures Motion"). The Sale Procedures

Motion, among other things, set forth a schedule for the marketing, auction and sale of the Debtor properties – including the FER Property and the 600 Guyon Property.

22. The Sale Procedures Motion was granted by order dated April 29, 2024 [ECF No. 80] (the "Sale Procedures Order").

**C. H Capital Bids to Purchase Debtor Properties.**

23. H Capital Holdings, LLC ("H Capital") was introduced to Debtors by CBRE.

24. In response to the marketing of Debtor properties by CBRE, H Capital submitted bids to purchase (i) the FER Property from the FER Sellers, and (ii) the 600 Guyon Property from Debtor Plaintiff Supor 600.

25. Pursuant to a bid dated July 9, 2024, H Capital proposed to purchase the FER Property for $42 million and the 600 Guyon Property for $8 million.

26. Pursuant to a revised bid dated July 18, 2024, H Capital proposed to purchase the FER Property for $48 million and the 600 Guyon Property for $8 million.

**D. The H Capital Agreement to Purchase the FER Property.**

27. FER Sellers entered into a Purchase and Sale Agreement with H Capital dated as of August 15, 2024, to sell the FER Property to H Capital for $48 million (the "H Capital PSA").

28. On August 23, 2024, FER Sellers filed a motion to authorize and approve (i) the sale of the FER Property pursuant to the H Capital PSA; (ii) assumption and assignment of executory contracts and unexpired leases; (iii) rejection of unexpired leases; and (iv) granting related relief (the "FER Sale Motion") [ECF. No. 195].

29. By way of Order Shortening Time dated August 26, 2024, the FER Sale Motion was originally set for hearing on September 10, 2024 [ECF No. 198].

30. Upon information and belief, H Capital submitted an application to the Harrison Redevelopment Authority (the "HRA") seeking approval for the assignment of the Harrison RDA.

31. The hearing on the FER Sale Motion was adjourned from time to time while the Sellers attempted to negotiate with the Town of Harrison and HRA regarding the proposed assignment of the Harrison RDA to H Capital.

32. On September 24, 2024, the Town of Harrison and the HRA filed a Limited Objection to the FER Sale Motion (the "Harrison Objection") [ECF No. 242]. The Town of Harrison and the HRA are referred to collectively herein as the "Harrison Objectors."

33. On September 27, 2024, the FER Debtors submitted a Response to the Harrison Objection [ECF No. 250].

34. The parties ultimately resolved the issues raised in the Harrison Objection, and the FER Sale Motion proceeded on October 7, 2024. On October 7, 2024, the Court entered an Order approving the FER Sale Motion (the "Sale Order") [ECF No. 279].

**E. Confirmation of the Debtors' First Amended Plan.**

35. On May 6, 2024, Debtors filed a *Motion for an Order (i) Approving the Joint Disclosure Statement on an Interim Basis, (ii) Scheduling a Combined Hearing to Consider the Adequacy of the Disclosure Statement and Confirmation of the Plan, (iii) Establishing Deadlines and Procedures for Solicitation and Tabulation of Votes, (v) Approving the Form of Ballot and Solicitation Package, (vi) Approving the Form and Manner of Notice Provisions and (vii) Granting Related Relief* [ECF No. 92] (the "Solicitation Motion"). The Solicitation Motion was approved by order dated May 30, 2024 [ECF No. 133].

36. On September 22, 2024, Debtors filed a *First Amended Joint Disclosure Statement and Plan of Reorganization* (the "Plan" or "First Amended Plan") [ECF No. 240]. The First Amended Plan modified the initial plan by (i) revising certain provisions relative to releases provided under the Plan to resolve the objections of the United States Trustee; (ii) detailing proposed Exit Transactions for the disposition of the FER Property, as well as other Debtor and non-Debtor

properties (the "Non-Debtor Property Sales"); (iii) incorporating a Plan Funding Agreement for the contribution of proceeds from the Non-Debtor Property Sales by the non-Debtor entities towards the Debtors' obligations under the First Amended Plan; and (iv) providing for the submission of an Addendum to the Restructuring Support Agreement ("RSA") previously executed between the Debtors and secured lenders 1000 Frank E. Rodgers 1, LLC and 1000 Frank E. Rodgers 2, LLC (collectively, the "Secured Creditors") to provide for the Exit Transactions and Funding Agreement as set forth above.

37. On October 7, 2024, the Court entered *Findings of Fact and Conclusions of Law and Order (I) Approving the Combined First Amended Disclosure Statements and (II) Confirming the First Amended Plan of Reorganization and/or Liquidation for Debtors* (the "Confirmation Order") [ECF No. 280].

38. At page 23, the Confirmation Order approved the Bankruptcy Court's retention of jurisdiction as set forth in the Plan.

**F. Modification and Termination of the H Capital PSA.**

39. The H Capital PSA was amended many times to, among other things, extend the closing date of the sale of the FER Property to H Capital. Those amendments are reflected in numerous stipulated orders entered by the Bankruptcy Court.

40. On May 16, 2025, FER Sellers issued a Notice of Default and Termination of Purchase and Sale Agreement to H Capital (the "Termination Notice"). The Termination Notice specified that the termination of the PSA with H Capital was effective as of May 21, 2025, at 11:59 p.m. eastern standard time (the "Termination Date").

41. The FER Sellers terminated the H Capital PSA as of the Termination Date.

42. On June 16, 2025, FER Sellers filed an adversary proceeding in this Court against H Capital and others related to the H Capital PSA and the FER Property, Adv. Pro. No. 25-01251 (the "H Capital Litigation"). The H Capital Litigation remains pending.

**G. Remarketing the FER Property.**

43. On July 11, 2025, the FER Sellers and other Debtors entered into a Real Estate Consulting and Advisory Services Agreement with Hilco Real Estate LLC ("Hilco") whereby the Sellers engaged Hilco to re-market and sell the FER Property, among other properties.

44. Hilco undertook to market and sell the FER Property and the other Debtor properties. The original bid deadline established by Hilco in the re-marketing process was September 30, 2025. That deadline was extended until October 28, 2025, with the advice and consent of the Secured Creditors.

45. Hilco received only two bids for the FER Property. One bid was from the Town of Harrison to purchase the FER Property for $29 million. The second bid was a credit bid of $25 million by Secured Creditors.

46. Because the offer by the Town of Harrison was $19 million less than the offer by H Capital, FER Debtors continued efforts to find alternatives which would maximize the value of the FER Property to satisfy the Debtors' obligations under the confirmed Plan.

47. While Debtors were trying to maximize the value of the FER Property, the FER Sellers' attorneys were negotiating a Purchase and Sale Agreement ("PSA") with the Town of Harrison for the proposed sale at $29 million. The Town of Harrison was demanding certain concessions which were not contained in their offer that was submitted for the FER Property, including demands for environmental due diligence and other contingencies which were unacceptable to the Sellers.

**H. The Order Granting Harrison's Motion to Compel Execution of the Harrison PSA and the Sale Order.**

48. On February 19, 2026, Secured Creditors filed a *Motion for Order Compelling*

*Debtors' Performance Under Confirmed First Amended Plan of Reorganization and/or Liquidation for Debtors* (the "Motion to Compel Performance") [ECF No. 478]. This motion, *inter alia*, sought to compel the FER Sellers to consummate an Exit Transaction as required under the Plan, specifically by conveying the FER Property to Harrison for $29 million.

49. The Motion to Compel Performance also sought to compel Supor 600 and other affiliated Debtors to convey certain properties to Secured Creditors by way of credit bid – including the 600 Guyon Property for a credit bid of $10 million.

50. On April 23, 2026, Harrison filed a *Motion (i) Compelling Execution of the Purchase and Sale Agreement by the Debtors for the FER Properties, or in the Alternative by Town of Harrison as Attorney-In-Fact, and (ii) Authorizing the Town of Harrison to Tender the Deposit Under the Purchase and Sale Agreement into the Court to Consummate the Transaction* (the "Motion to Compel Execution") [ECF No. 495].

51. On May 4, 2026, the Court entered an order granting the Motion to Compel Execution (the "Order Compelling Execution") [ECF No. 506] which, *inter alia*, compelled the FER Sellers to execute and deliver a purchase and sale agreement with Harrison for the sale of the FER Property.

52. FER Sellers did execute and deliver a purchase and sale agreement to sell the FER Property to Harrison for $29 million (the "Harrison PSA") as required by the Order Compelling Execution.

53. On May 13, 2026, the Court entered an Order granting the Motion Compelling Performance under the Plan (the "Order Compelling Performance") [ECF No. 509] which order, *inter alia*, directed Harrison and the FER Sellers to close the sale of the FER Property "on or before May 18, 2026, unless otherwise agreed to by [FER] Sellers, Purchaser and Secured Creditors or as otherwise ordered by this Court."

## I. **<u>The Everest Capital Loan Commitments</u>.**

54. On May 13, 2026, Everest Capital entered into a loan commitment with FER Debtors (the "Everest Capital FER Loan Commitment"), pursuant to which Everest Capital committed to lend FER Debtors $49 million (the "FER Loan").

55. Among other things, the Everest Capital FER Loan Commitment provides that: (i) FER Debtors' principal Joseph Supor, III, will personally guarantee the FER Loan, (ii) the FER Loan will be secured by a first mortgage on the FER Property, (iii) the parties will use commercially reasonable efforts to fund and close the FER Loan on or before May 29, 2026.

56. The Everest Capital FER Loan Commitment was executed by FER Debtors and Everest Capital.

57. On May 13, 2026, Everest Capital also entered into a loan commitment with Supor 600 (the "Everest Capital Guyon Loan Commitment" and, together with the Everest Capital FER Loan Commitment, the "Everest Capital Loan Commitments"), pursuant to which Everest Capital committed to lend Supor 600 $17 million (the "600 Guyon Loan").

58. Among other things, the Everest Capital Guyon Loan Commitment provides that: (i) Joseph Supor III, principal of Supor 600, will personally guarantee the 600 Guyon Loan, (ii) the 600 Guyon Loan will be secured by a first mortgage on the 600 Guyon Property, (iii) the parties will use commercially reasonable efforts to fund and close the 600 Guyon Loan on or before May 29, 2026.

59. The Everest Capital Guyon Loan Commitment was executed by Everest Capital and Supor 600.

60. The FER Sellers and Supor 600 each caused an affiliate to tender a $100,000 "Standby Deposit" to E-Lending LLC, an affiliate of Everest Capital, in connection with their respective Everest Capital Loan Commitments.

61. Pursuant to the Everest Capital Loan Commitments, Everest Capital made material representations to Plaintiffs.

62. More specifically, by executing the Everest Capital Loan Commitments, Everest Capital represented to the Plaintiffs that it was ready, willing, and able to fund and close on both of the Everest Capital Loan Commitments, and that it had, or had committed access to, funds sufficient to fund both of the Everest Capital Loan Commitments.

63. Everest Capital further represented that its obligation to fund the FER Loan and the 600 Guyon Loan was subject only to satisfaction of those conditions set forth in the Everest Capital Loan Commitments.

**J. Everest Capital's Failure to Close on the Loan Commitments.**

64. On May 15, 2026, FER Debtors filed an *Emergent Motion for Modification of the Order dated May 13, 2026 Compelling FER Debtors' Performance Under Confirmed First Amended Plan and for Related Relief* [ECF No. 512]

65. On May 22, 2026, the Court entered the *Order Modifying Order dated May 13, 2026 Compelling FER Debtors' Performance Under Confirmed First Amended Plan Regarding FER Property* (the "Order Modifying Prior Order Compelling Performance") [ECF No. 525].

66. Pursuant to the Order Modifying Prior Order Compelling Performance, the Court extended the deadline for the FER Debtors to close a sale of the FER Property to the Town of Harrison to June 10, 2026, but not later than June 17, 2026, in order to allow Everest Capital to fund and close the loans pursuant to the Everest Capital Loan Commitments by June 9, 2026.

67. On June 8, 2026, the Harrison Objectors requested a telephonic hearing with the Court to raise objections to the refinancing of the FER Property that was scheduled for that day. More specifically, HRA indicated that it did not consent to the refinancing. The Harrison Objectors contended that HRA's consent was needed in order to close on the refinancing.

68. As a result of the request of the Harrison Objectors, the Court held a hearing on June 8, 2026.

69. At the June 8, 2026, hearing, Everest Capital expressed no hesitation or misgivings as to its ability to close on the loans on that date. To the contrary, counsel for Everest Capital stated that counsel for the Plaintiffs was "in my office with his clients to do the closing. I mean, we left them with loan documents."

70. In an Order dated June 12, 2026, the Court extended the deadline to close the sale of the FER Property to Harrison until June 18, 2026 (the "Order Modifying May 22, 2026 Order") [ECF No. 532] in order to allow Everest Capital to close the loans pursuant to the Everest Capital Loan Commitments by June 17, 2026.

71. The Order Modifying May 22, 2026 Order further compelled the Harrison Objectors to inform counsel for the FER Debtors whether they consent to the closing of the FER Loan by June 15, 2026.

72. The Harrison Objectors subsequently consented to the closing of the FER Loan and on June 17, 2026, the Court entered an Order confirming the Harrison Objectors' consent ("Consent Order Confirming the Redevelopment Agreement") [ECF No. 537].

73. On June 17, 2026, for the very first time, counsel for Everest Capital advised counsel for Plaintiffs via email that it would not fulfill its obligations under the Everest Capital Loan Commitments and close on the loans on or before the June 17, 2026 deadline.

74. More specifically, Everest Capital advised that it would not fund the loan as to the FER Property because it alleged that the Everest Capital FER Loan Commitment required that the entirety of the obligations due to Secured Creditors be satisfied by the FER Debtors and/or the other affiliated Debtors or the proposed guarantor.

75. In response to counsel for Everest Capital's June 17, 2026 email, on June 18, 2026, counsel for Plaintiffs advised counsel for Everest Capital that the satisfaction of the alleged shortfall to Secured Creditors by Plaintiffs was not a condition for closing the FER Loan and the Guyon Loan, that Plaintiffs were ready, willing and able to close on the FER Loan and Guyon Loan as scheduled, and that Everest Capital's failure to fund the loans as scheduled constituted a clear breach of the Everest Capital Loan Commitments.

76. There is no provision requiring the satisfaction of all obligations to Secured Creditors in the Everest Capital FER Loan Commitment.

77. Section 13.1 of the Everest Capital FER Loan Commitment, titled "advance conditions," states only that "Borrower shall be the legal and beneficial owner of good and marketable title to the Property, free and clear of all liens and encumbrances except those reasonably approved by Lender."

78. By its plain terms, the Everest Capital FER Loan Commitment only required that Secured Creditors' lien on the FER Property be removed and did not require that the FER Debtors or any other party pay the shortfall or balance due to Secured Creditors relative to other properties owned by parties other than the FER Debtors.

79. As of the June 17, 2026 closing deadline, there were no material adverse conditions justifying Everest Capital's refusal to proceed with the closing of the loans pursuant to the Everest Capital Loan Commitments.

80. As of June 17, 2026, all conditions to the Everest Capital Loan Commitments had been satisfied.

81. Despite Borrowers' compliance with all of the conditions set forth in the Everest Capital Loan Commitments, Everest Capital refused to honor its commitment to close on the loans.

82. Everest Capital did not close on the Everest Capital Loan Commitments on or before June 17, 2026.

83. As a result of the failure to close, the Harrison Objectors requested to be heard with respect to the status of the refinancing and Borrowers' obligation to convey the FER Property to the Town of Harrison.

84. On June 18, 2026, the parties appeared again before the Court. During the June 18, 2026 hearing, the Court remarked about Everest Capital's change of plan: "[Y]ou've appeared a couple times now in front of the Court and kept telling me that the lender was ready, willing, and able and supported everything . . . . How is it – you said that if there was no material adverse change, but if something existed prior to the signing of the documents, how is that a change?"

85. On June 20, 2026, counsel for Plaintiffs wrote to counsel for Everest Capital via email demanding that Everest Capital immediately fund the FER Loan and Guyon Loan pursuant to the Everest Capital Loan Commitments and attached an email from counsel for Secured Creditors indicating that Secured Creditors would release any obligation of Mr. Supor as guarantor as to any shortfall on the amounts due to Secured Creditors, subject to the closing of the FER Loan and Guyon Loan.

86. Thereafter, the Court convened a hearing on June 22, 2026, and required the appearance of a representative of Everest Capital to explain the company's actions. During the June 22, 2026

hearing, Everest Capital's CEO, Mr. Alex Wu, testified that, as of a week or two prior to that hearing, Everest Capital had "the financial ability to close" on the two loans.

87. Mr. Wu testified that the shortfall to Secured Creditors was a "dramatic change on the loan amount," which kept Everest Capital from closing on the FER Loan Commitment. Nonetheless, he testified that, upon learning that the Secured Creditors shortfall would no longer apply because Secured Creditors had agreed to waive the guarantee of Joseph Supor III on any remaining balance due upon funding of the loans by Everest Capital, he was "comfortable saying that we can close it on Thursday [June 25, 2026]."

88. Mr. Wu explained that the loans required the approval of the Industrial and Commercial Bank of China ("ICBC"), because ICBC was funding the loans.

89. When asked by the Court, however, Mr. Wu confirmed that "even if ICBC doesn't fund the loan on Thursday [June 25, 2026]," Everest Capital had the wherewithal to close the loans from its own available line of credit and was "prepared and willing to fund the loan . . . ."

90. Mr. Wu indicated that, if ICBC did not fund the loans and Everest Capital needed to procure alternate funding, Everest Capital could close "within two more days."

91. In order to avoid further delaying the closing, the Court requested assurance from Mr. Wu that Everest Capital would be moving toward a closing on Thursday [June 25, 2026] with either ICBC funding or Everest Capital's own line of credit, to which Mr. Wu responded that the loan would close on Thursday, June 25, 2026, specifically testifying:

> Q. And so based on what you've told me today, then I can be assured that you will be moving towards a closing on Thursday with either ICBC funding or Everest utilizing its line of credit?
>
> A. That's right.
>
> Q. So that's a yes?

A. Yes.

92. On June 24, 2026, counsel for Plaintiffs and counsel for Secured Creditors emailed counsel for Everest Capital to inquire about the status of funding for the FER Loan and Guyon Loan. Counsel for Plaintiffs further advised that Plaintiffs remained ready, willing and able to close both loans, and were prepared to sign the closing statements. Counsel for Everest Capital did not provide an update regarding the status of the funding but stated that Everest Capital's CEO was "cognizant" of the June 25, 2026 deadline.

93. Everest Capital was not, in fact, ready, willing and able to close on Thursday, June 25, 2026, and failed to close either of the loans as required under the Everest Capital Loan Commitments on that date despite Mr. Wu's sworn testimony to the Court.

94. Following Everest Capital's failure to close on Thursday, June 25, 2026, the Court held yet another hearing on June 26, 2026. At the June 26, 2026 hearing, Mr. Wu testified that Everest Capital was on notice that FER Debtors were ready, willing, and able to close the loan amounts of $49 million and $17 million as of June 24, 2026, and that Everest Capital did not close the loans on June 25, 2026, despite having the funding to do so.

95. When asked why the loans were not funded on June 25, 2026, Mr. Wu testified that Everest Capital had the funds available but did not fund the loans due to outstanding items on their checklist that were purportedly required from the FER Debtors and/or Supor 600 and related timing issues.

96. In his testimony, Mr. Wu did not identify any specific outstanding items required from the FER Debtors and/or Supor 600 under the Everest Capital Loan Commitments. Mr. Wu also suggested that the loans were not funded in part due to ICBC not approving the loans, and that ICBC was no longer in the picture.

97. At the June 26, 2026 hearing, Gregg F. Paster, appearing as "house counsel" for Everest Capital, stated that there were no additional conditions or issues that had been raised to him that would prevent a closing to occur on Tuesday [June 30, 2026]. Wu similarly admitted that, after a brief recess and speaking to his "guys," there were no outstanding items with respect to the FER Debtors' and/or Supor 600's obligations in connection with closing the loans pursuant to the Everest Capital Loan Commitments.

98. Mr. Wu admitted that neither of the Everest Capital Loan Commitments were contingent on Everest Capital obtaining financing from a third party, such as ICBC, and acknowledged that the commitments were binding on Everest Capital.

99. Mr. Wu admitted under oath that there was no writing signed by the parties to the Everest Capital Loan Commitments that altered the terms of either commitment.

100. At the conclusion of the June 26, 2026 hearing, Judge Meisel explicitly asked Mr. Wu if Everest Capital was prepared to close on the loan documents as they existed, no matter what transpired after the hearing concluded, to which Mr. Wu replied "Yes."

101. In making that representation to the Court, Mr. Wu testified that he was binding Everest Capital with his statements, and that he took full responsibility for any consequences resulting from his statements.

102. On the record during the June 26, 2026 hearing, Everest Capital consented to be bound by a Court Order compelling them to close on the Everest Capital Loan Commitments by June 30, 2026, and that failure to do so would require the FER Property to be sold to the Town of Harrison.

103. Following the June 26, 2026 hearing, on June 29, 2026, the Court entered an *Order Modifying the June 12, 2026 Order [ECF No. 532] Extending Closing Deadline and (II)*

*Compelling Everest Blue Capital LLC to Fund and Close Proposed Refinancing Transactions Pursuant to the Terms of May 13, 2026 Loan Commitments and June 11, 2026 Loan Documents* (the "Order Compelling Everest Capital to Fund and Close Loans") [ECF No. 555].

104. The Order Compelling Everest Capital to Fund and Close Loans provided that on or before 7:00 p.m. on June 30, 2026, Everest Capital was required to fund and close the FER Loan and Guyon Loan pursuant to the terms of the Everest Capital Loan Commitments, without satisfaction of any additional conditions by the Plaintiffs, and subject only to updating the closing statements for the loans to the date the loans were funded and closed by Everest Capital.

105. Significantly, the Order Compelling Everest Capital to Fund and Close Loans provided that, if the FER Loan did not close on or before the June 30, 2026 deadline, the FER Property would be sold to the Town of Harrison and, upon funding by the Town of Harrison of the full amount of the purchase price under the Harrison PSA, the Title Agent was required to release the closing documents from escrow to the Town of Harrison entitling Harrison to record same and consummate the sale transaction of the FER Property subject to the Harrison PSA.

106. On June 30, 2026, at approximately 3:11 p.m., counsel for Everest Capital transmitted an email notifying counsel for Plaintiffs that funds were in place to initiate the required wire payments that afternoon, but that the wire may not be received until overnight.

107. Despite Everest Capital's representations to Plaintiffs' counsel, Everest Capital did not fund either of the loans under the Everest Capital Loan Commitments by the June 30, 2026 deadline, or at any time thereafter.

108. On July 1, 2026, counsel for Everest Capital again transmitted an email to Plaintiffs' counsel explaining that the wire could not be initiated on the June 30, 2026 deadline

due to purported underwriting deficiencies and insufficient documentation, but insisted that the wire was prepared for transmittal and was only awaiting final approval.

109. Upon Everest Capital's failure to fund and close the loans as required under the Order Compelling Everest Capital to Fund and Close Loans, the Town of Harrison wrote to the Court via email dated July 1, 2026, seeking to enforce the Order Compelling Everest Capital to Fund and Close Loans and requesting an immediate status conference to compel the FER Sellers to sign the settlement statement for dale of the FER Property to the Town of Harrison and to close on the sale of the FER Property to the Town of Harrison.

110. In response to the Town of Harrison's request, the Court scheduled a hearing on July 2, 2026 at 9:30 a.m. The Court convened the hearing on July 2, 2026 as scheduled, at which time the Court declined to further extend the deadlines set forth in the Order Compelling Everest Capital to Fund and Close Loans.

111. In an email dated July 2, 2026, counsel for Everest Capital notified Plaintiffs' counsel that there was no evidence that the loan was funded, nor any realistic prospect of it being funded.

112. On July 2, 2026, the FER Property was sold to the Town of Harrison for $29 million in accordance with the Order Compelling Everest Capital to Fund and Close Loans.

113. The sale of the FER Property to the Town of Harrison produced $20 million less in proceeds than would have been generated if Everest Capital had closed the loan as required under the Everest Capital FER Loan Commitment and as required Order Compelling Everest Capital to Fund and Close Loans.

114. The sale of the FER Property to the Town of Harrison resulted in the loss of the FER Debtors' fee ownership of the FER Property, which fee ownership would have been retained

if Everest Capital had closed the FER Loan as required under the Everest Capital FER Loan Commitment and as required under the Order Compelling Everest Capital to Fund and Close Loans.

115. Plaintiffs satisfied all of their obligations under the Everest Capital Loan Commitments.

116. Everest Capital did not fund the loans as required under the Everest Capital Loan Commitments and the Order Compelling Everest Capital to Fund and Close Loans.

117. Everest Capital has not returned the two $100,000 deposits made on behalf of Plaintiffs for the Everest Capital Loan Commitments.

118. On July 7, 2026, counsel for the FER Debtors and Supor 600 again wrote to counsel for Everest Capital, confirming that Everest Capital had not funded and closed either the FER Loan or the Guyon Loan, and expressly asked Everest Capital to advise whether it was willing and able to fund and close the Everest Capital Guyon Loan Commitment and, if so, when.

119. In response, counsel for Everest Capital did not deny Everest Capital's continuing obligation to fund the Everest Capital Guyon Loan Commitment. Instead, counsel stated only that he had "made inquiry whether, and on what conditions, Everest [Capital] would fund the Guyon loan," and that he would revert once he received a response.

120. To date, Everest Capital has not funded or closed the Guyon Loan, has not identified any lawful basis for refusing to do so, and has not returned the $100,000 Standby Deposit made on behalf of Supor 600 in connection with the Everest Capital Guyon Loan Commitment.

121. Unlike the FER Property, which was sold to the Town of Harrison on July 2, 2026 pursuant to the June 29, 2026 Order, the 600 Guyon Property has not been sold or otherwise conveyed to a third party, and Supor 600 remains ready, willing, and able to close the Everest

Capital Guyon Loan Commitment.

**FIRST COUNT**

(Breach of Contract - Everest Capital FER Loan Commitment)

122. Plaintiffs repeat and reallege the allegations set forth in all preceding paragraphs of this Complaint, as if set forth at length herein.

123. The Everest Capital FER Loan Commitment constitutes a valid contract between FER Plaintiffs and Everest Capital.

124. FER Plaintiffs performed as required by the Everest Capital FER Loan Commitment.

125. FER Plaintiffs satisfied all conditions for closing required under the Everest Capital FER Loan Commitment.

126. At all relevant times, FER Plaintiffs were ready, willing, and able to close the FER Loan on the FER Property as and when required by the Everest Capital FER Loan Commitment.

127. Everest Capital breached the Everest Capital FER Loan Commitment, as set forth herein.

128. The Order Compelling Everest Capital to Fund and Close Loans constitutes a judicial finding that Everest Capital had a valid and actual contractual obligation to close the FER Loan pursuant to the Everest Capital FER Loan Commitment.

129. Everest Capital failed to comply with the Order Compelling Everest Capital to Fund and Close Loans, as set forth herein.

130. Without limiting the generality of the foregoing, Everest Capital breached the Everest Capital FER Loan Commitments by, among other things, failing to close the FER Loan as and when required by the Everest Capital FER Loan Commitment and as confirmed and directed by the Order Compelling Everest Capital to Fund and Close Loans.

131. As a result of its breach of its contractual obligations under the Everest Capital FER

Loan Commitment as confirmed by the Order Compelling Everest Capital to Fund and Close Loans, Plaintiffs have been damaged in an amount to be proven at trial based on the facts alleged herein, including but not limited to the $20 million shortfall between the proceeds to be realized under Everest Capital FER Loan Commitment and the $29 million ultimately realized on the sale of the FER Property to the Town of Harrison, the loss of the $100,000 Standby Deposit tendered on behalf of the FER Debtors in connection with the Everest Capital FER Loan Commitment, and the loss of the FER Debtors' fee ownership of the FER Property.

**WHEREFORE,** Plaintiffs respectfully requests that this Court enter judgment in favor of Plaintiffs and against Defendant Everest Capital as follows:

**a.** Awarding Plaintiffs damages in an amount to be determined at trial;

**b.** Awarding Plaintiffs their costs and attorneys' fees;

**c.** Granting Plaintiffs such other and further relief as the Court deems equitable and just.

**SECOND COUNT**

(Breach of Contract - Everest Capital Guyon Loan Commitment)

132. Plaintiffs repeat and reallege the allegations set forth in all preceding paragraphs of this Complaint, as if set forth at length herein.

133. The Everest Capital Guyon Loan Commitment constitutes a valid contract between Plaintiff 600 Guyon and Everest Capital.

134. Plaintiff 600 Guyon performed as required by the Everest Capital Guyon Loan Commitment.

135. Plaintiff 600 Guyon satisfied all conditions for closing required under the Everest Capital Guyon Loan Commitment.

136. At all relevant times, Plaintiff 600 Guyon was ready, willing, and able to close the

600 Guyon Loan as and when required by the Everest Capital Guyon Loan Commitment.

137. Everest Capital breached the Everest Capital Guyon Loan Commitment, as set forth herein.

138. The Order Compelling Everest Capital to Fund and Close Loans constitutes a judicial finding that Everest Capital had a valid and actual contractual obligation to close the 600 Guyon Loan pursuant to the Everest Capital Guyon Loan Commitment.

139. Everest Capital failed to comply with the Order Compelling Everest Capital to Fund and Close Loans, as set forth herein.

140. Without limiting the generality of the foregoing, Everest Capital breached the Everest Capital Guyon Loan Commitment by, among other things, failing to close the 600 Guyon Loan as and when required by the Everest Capital Guyon Loan Commitment and as confirmed and directed by the Order Compelling Everest Capital to Fund and Close Loans.

141. As a result of its breach of the Everest Capital Guyon Loan Commitment as confirmed by the Order Compelling Everest Capital to Fund and Close Loans, Plaintiffs have been damaged in an amount to be proven at trial based on the facts alleged herein, including but not limited to the loss of the $100,000 Standby Deposit tendered on behalf of Supor 600 in connection with the Everest Capital Guyon Loan Commitment, and the difference in the amount as may be realized by 600 Guyon in any Exit Transaction that may be consummated and the $17 million that would have been realized had Everest Capital fulfilled its contractual obligations to close the 600 Guyon Loan.

**WHEREFORE,** Plaintiffs respectfully requests that this Court enter judgment in favor of Plaintiff 600 Guyon and against Defendant Everest Capital as follows:

**a.** Awarding Plaintiff damages in an amount to be determined at trial;

**b.** Awarding Plaintiff their costs and attorneys' fees;

**c.** Granting Plaintiff such other and further relief as the Court deems equitable and just.

## THIRD COUNT

(Fraud in the Inducement as to the Everest Capital FER Loan Commitment)

142. Plaintiffs repeat and reallege the allegations set forth in all preceding paragraphs of this Complaint, as if set forth at length herein.

143. As set forth above, Everest Capital made representations to FER Plaintiffs regarding Everest Capital's capabilities to satisfy its obligations under the Everest Capital FER Loan Commitment and close on the transaction.

144. As set forth above, Everest Capital also made representations to FER Plaintiffs that certain funds required to close on the loan transaction were about to be sent, had been sent, or would imminently arrive and be made available for the closing.

145. On June 8, 2026, Everest Capital represented to Plaintiffs that they had no objections to closing on the FER Loan.

146. Everest Capital further represented to the Court that Everest Capital was ready, willing, and able to close on the FER Loan.

147. On June 22, 2026, Everest Capital represented to the Court that it would close on the FER Loan by June 25, 2026.

148. Everest Capital's representations on its readiness, willingness and ability to close the FER Loan were material.

149. Everest Capital made these representations to FER Plaintiffs to induce FER Plaintiffs to enter into the Everest Capital FER Loan Commitment, and to induce FER Plaintiffs to forbear from exercising their remedies under the Everest Capital FER Loan Commitment.

150. The aforesaid representations made by Everest Capital to FER Plaintiffs were false.

151. The aforesaid representations made by Everest Capital to the Court were false.

152. Everest Capital knew these misrepresentations were false when it made them.

153. Everest Capital made these misrepresentations with the intent of inducing FER Plaintiffs to rely on them.

154. Everest Capital made these representations wantonly, recklessly and/or maliciously.

155. FER Plaintiffs did in fact rely upon Everest Capital's misrepresentations when they decided to enter into the Everest Capital FER Loan Commitment and, but for the misrepresentations, would not have entered into same.

156. FER Plaintiffs relied on Everest Capital's misrepresentations when they decided to forbear from exercising their remedies under the Everest Capital FER Loan Commitment and, but for the misrepresentations, would not have done so.

157. Everest Capital's misrepresentations, and FER Plaintiffs' reliance on said misrepresentations, proximately caused FER Plaintiffs to suffer loss, injury and damages.

**WHEREFORE,** Plaintiffs respectfully requests that this Court enter judgment in favor of FER Plaintiffs and against Everest Capital, as follows:

**a.** Awarding Plaintiffs damages in an amount to be determined at trial;

**b.** Awarding Plaintiffs their costs and attorneys' fees;

**c.** Granting Plaintiffs such other and further relief as the Court deems equitable and just.

## FOURTH COUNT

(Fraud in the Inducement as to the Everest Capital Guyon Loan Commitment)

158. Plaintiff 600 Guyon repeats and realleges the allegations set forth in all preceding paragraphs of this Complaint, as if set forth at length herein.

159. As set forth above, Everest Capital made representations to Plaintiff 600 Guyon regarding Everest Capital's capabilities to satisfy its obligations under the Everest Capital Guyon Loan Commitment and close on the contemplated loan transaction.

160. As set forth above, Everest Capital also made representations to Plaintiff 600 Guyon that certain funds required to close on the transaction were about to be sent, had been sent, or would imminently arrive and be made available for the closing.

161. On June 8, 2026, Everest Capital represented to Plaintiff 600 Guyon that they had no objections to closing on the 600 Guyon Loan.

162. Everest Capital further represented to the Court that Everest Capital was ready, willing, and able to close on the 600 Guyon Loan.

163. On June 22, 2026, Everest Capital represented to the Court that it would close on the 600 Guyon Loan by June 25, 2026.

164. These representations were material.

165. Everest Capital made these representations to Plaintiff 600 Guyon to induce Plaintiff 600 Guyon to enter into the Everest Capital Guyon Loan Commitment, and to induce Plaintiff 600 Guyon to forbear from exercising their remedies under the Everest Capital Guyon Loan Commitment.

166. The aforesaid representations made by Everest Capital to Plaintiff 600 Guyon were false.

167. The aforesaid representations made by Everest Capital to the Court were false.

168. Everest Capital knew these misrepresentations were false when it made them.

169. Everest Capital made these misrepresentations with the intent of inducing Plaintiff 600 Guyon to rely on them.

170. Everest Capital made these representations wantonly, recklessly and/or maliciously.

171. Plaintiff 600 Guyon did in fact rely upon Everest Capital's misrepresentations when they decided to enter into the Everest Capital Guyon Loan Commitment and, but for the misrepresentations, would not have entered into same.

172. Plaintiff 600 Guyon relied on Everest Capital's misrepresentations when they decided to forbear from exercising their remedies under the Everest Capital Guyon Loan Commitment and, but for the misrepresentations, would not have done so.

173. Everest Capital's misrepresentations, and Plaintiff 600 Guyon's reliance on said misrepresentations, proximately caused Plaintiff 600 Guyon to suffer loss, injury and damages.

**WHEREFORE,** Plaintiffs respectfully requests that this Court enter judgment in favor of Plaintiff 600 Guyon and against Everest Capital, as follows:

**a.** Awarding Plaintiff damages in an amount to be determined at trial;

**b.** Awarding Plaintiff their costs and attorneys' fees;

**c.** Granting Plaintiff such other and further relief as the Court deems equitable and just.

**FIFTH COUNT**

(Breach of Duty of Good Faith and Fair Dealing as to Everest Capital FER Loan Commitment)

174. Plaintiffs repeat and re-allege the allegations set forth in all preceding paragraphs of this Complaint, as if set forth at length herein.

175. All contracts are governed by an implied covenant of good faith and fair dealing.

176. Everest Capital breached its duty of good faith and fair dealing by acting in bad faith with respect to its obligations under the Everest Capital FER Loan Commitment.

177. Everest Capital acted in bad faith by, among other things, acting dishonestly and consistently misrepresenting its ability and/or intent to perform its obligations under the Everest Capital FER Loan Commitment.

178. Everest Capital demanded that FER Plaintiffs provide additional information and assurances that were not required under Everest Capital FER Loan Commitment.

179. Everest Capital relied upon its pretextual demands to avoid performing its obligations under the Everest Capital FER Loan Commitment.

180. Everest Capital further acted in bad faith by continuously frustrating FER Plaintiffs' efforts to obtain information from Everest Capital regarding the status of funds required to perform its obligations under the Everest Capital FER Loan Commitment.

181. Everest Capital acted with an improper motive and injured the rights of FER Plaintiffs to receive their benefits and reasonable expectations under the Everest Capital FER Loan Commitment.

182. The breach by Everest Capital of its duty of good faith has caused FER Plaintiffs significant harm and damage.

**WHEREFORE,** Plaintiffs respectfully requests that this Court enter judgment in favor of FER Plaintiffs and against Everest Capital as follows:

**a.** Awarding Plaintiffs damages in an amount to be determined at trial;

**b.** Awarding Plaintiffs their costs and attorneys' fees;

**c.** Granting Plaintiffs such other and further relief as the Court deems equitable and just.

**SIXTH COUNT**

(Breach of Duty of Good Faith and Fair Dealing as to Everest Capital Guyon Loan Commitment)

183. Plaintiffs repeat and re-allege the allegations set forth in all preceding paragraphs of this Complaint, as if set forth at length herein.

184. All contracts are governed by an implied covenant of good faith and fair dealing.

185. Everest Capital breached its duty of good faith and fair dealing by acting in bad faith with respect to its obligations under the Everest Capital Guyon Loan Commitment.

186. Everest Capital acted in bad faith by, among other things, acting dishonestly and consistently misrepresenting its ability and/or intent to perform its obligations under the Everest Capital Guyon Loan Commitment.

187. Everest Capital demanded that Plaintiff 600 Guyon provide additional information and assurances that were not required under the Everest Capital Guyon Loan Commitment.

188. Everest Capital relied upon its pretextual demands to avoid performing its obligations under the Everest Capital Guyon Loan Commitment.

189. Everest Capital further acted in bad faith by continuously frustrating Plaintiff 600 Guyon's efforts to obtain information from Everest Capital regarding the status of funds required to perform its obligations under the Everest Capital Guyon Loan Commitment.

190. Everest Capital acted with an improper motive and injured the rights of Plaintiff 600 Guyon to receive their benefits and reasonable expectations under the Everest Capital Guyon Loan Commitment.

191. The breach by Everest Capital of its duty of good faith has caused Plaintiff 600 Guyon significant harm and damage.

**WHEREFORE,** Plaintiffs respectfully requests that this Court enter judgment in favor of

Plaintiff 600 Guyon and against Everest Capital as follows:

**a.** Awarding Plaintiff damages in an amount to be determined at trial;

**b.** Awarding Plaintiff their costs and attorneys' fees;

**c.** Granting Plaintiff such other and further relief as the Court deems equitable and just.

## SEVENTH COUNT

(Violation of the New Jersey Consumer Fraud Act)

192. Plaintiffs repeat and reallege the allegations set forth in all preceding paragraphs of this Complaint, as if set forth at length herein.

193. Everest Capital used and employed deception, false promises, and/or misrepresentations related to Everest Capital Loan Commitments.

194. Everest Capital's deception, false promises, and/or misrepresentations constituted an unlawful practice in violation of the New Jersey Consumer Fraud Act ("NJCFA").

195. Everest Capital's conduct in connection with the issuance and administration of the Everest Capital Loan Commitments, including its solicitation and collection of standby deposits and its material misrepresentations and excuses regarding its readiness, willingness, and ability to fund, constitutes the sale and/or advertisement of "merchandise" within the meaning of the NJCFA.

196. Upon executing the Everest Capital Loan Commitments, Everest Capital made material representations to Plaintiffs, including that it was ready, willing, and able to fund and close on both loans, and that it had or had committed access to funds sufficient to fund both Loan Commitments.

197. Everest Capital engaged in an extended campaign of deceiving the Court and Plaintiffs into believing that Everest Capital would close on the Everest Capital Loan Commitments.

198. Misled by Everest Capital's misrepresentations, Plaintiffs paid Everest Capital two $100,000 standby deposits.

199. At no point prior to June 17, 2026, did Everest Capital ever raise any concern about closing on the loans.

200. Indeed, during the June 8, 2026 hearing, counsel for Everest Capital represented to the Court and Plaintiffs that Everest Capital was ready, willing, and able to close on the loans.

201. On June 17, 2026, for the very first time, Everest Capital advised that it was declining to fund the loans because the Everest Capital FER Loan Commitment allegedly required that all obligations to Secured Creditors be satisfied, despite the fact that the Everest Capital FER Loan Commitment contained no such provision or requirement.

202. Secured Creditors agreed to waive its rights to collect any shortfall from Mr. Supor under his personal guaranty on the condition that the Everest Capital FER Loan Commitment loan was funded by Everest Capital.

203. There were no adverse material changes to Plaintiffs' financial condition.

204. Plaintiffs satisfied all conditions required by them under the Everest Capital Loan Commitments.

205. On several occasions, Mr. Wu represented to both the Court and to Plaintiffs that Everest Capital had the money to fund the loans, was ready, willing and able to close on the loans, and understood that Everest Capital was obligated to close on the loans under the Everest Capital Loan Commitments, yet Everest Capital never funded the loans as promised.

206. Everest Capital's campaign of deceit extended as far as misrepresenting to Plaintiffs on June 30, 2026, that Everest Capital had the funds in place to initiate the required wire payments that very afternoon.

207. Upon information and belief, Everest Capital knew when it made these statements that they were, in fact, untrue.

208. Upon information and belief, Everest Capital did not at any time have the ability or the intention to close on the Everest Capital Loan Commitments.

209. The foregoing conduct by Everest Capital constitutes unconscionable commercial practices, deception, fraud, false pretenses, false promises, and/or misrepresentation within the meaning of N.J.S.A. 56:8-2.

210. Plaintiffs satisfied all of their obligations under the Everest Capital Loan Commitments. Nevertheless, Everest Capital did not fund the loans as required by the Everest Capital Loan Commitments and the Order Compelling Everest Capital to Fund and Close Loans.

211. Despite failing to fund and close the loans as required by the Everest Capital Loan Commitments and the Order Compelling Everest Capital to Fund and Close Loans, Everest Capital has also refused to return Plaintiffs' two $100,000 standby deposits.

212. Plaintiffs suffered an ascertainable loss as a direct and proximate result of Everest Capital's unlawful conduct, including the loss of its deposits, totaling $200,000, as well as the loss of ownership of the FER Property which was sold for $20 million less than would have been realized if the FER Loan closed.

213. There is a direct causal relationship between Everest Capital's unlawful conduct under the NJCFA and the ascertainable losses suffered by Plaintiffs.

214. Pursuant to N.J.S.A. 56:8-19, Plaintiffs are entitled to recover treble damages for any ascertainable loss suffered as a result of Everest Capital's unlawful conduct, together with reasonable attorneys' fees, filing fees, and reasonable costs of suit.

**WHEREFORE,** Plaintiffs respectfully requests that this Court enter judgment in favor of Plaintiffs and against Defendant Everest Capital as follows:

**a.** Awarding Plaintiffs damages in an amount to be determined at trial;

**b.** Trebling all damages awarded to Plaintiffs;

**c.** Awarding Plaintiffs their costs and attorneys' fees;

**d.** Granting Plaintiffs such other and further relief as the Court deems equitable and just.

Respectfully submitted,

**K&L GATES LLP**

/s/*David S. Catuogno*
**K&L GATES LLP**
One Newark Center
1085 Raymond Boulevard, 10th Floor
Newark, NJ 07102
Telephone: (973) 848-4000
Facsimile: (973) 848-4001
Daniel M. Eliades, Esq.
David S. Catuogno, Esq.
*Special Counsel for the Plaintiffs*

**FORMAN HOLT**
2 University Drive, Suite 308
Hackensack, NJ 07601
Telephone: (201) 857-7110
Facsimile: (201) 665-6650
Michael E. Holt, Esq.
*Counsel for the Plaintiffs*

Dated: October 12 , 2026